IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| ABBAS AZIZI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 1:26-cv-1513 (RDA/WEF) |
| v. | ) | |
| | ) | |
| MARCO RUBIO, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendants Secretary of State Marco Rubio and Charge of Affairs David Allen's ("Defendants") Motion to Dismiss ("Motion"). Dkt. 5. This Court has dispensed with oral argument as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter is now ripe for disposition. Considering the Motion together with the Complaint (Dkt. 1) and Defendants' Memorandum in Support (Dkt. 6), this Court GRANTS the Motion for the reasons that follow.

## I. BACKGROUND

### A. Factual Background[1]

Plaintiff Abbas Azizi ("Plaintiff"), proceeding *pro* se, is a United States ("U.S.") citizen seeking an immigrant visa for himself and his wife, a beneficiary. Dkt. 1 at 3-4. On July 7, 2022, Plaintiff filed an I-130 Petition for him and his wife, which was approved. Dkt. 1-1 at 1. After the approval, Plaintiff's Petition was sent to the State Department. *Id.* at 10-12. Plaintiff and his wife appeared for her consular interview at the United States Embassy in Yerevan, Armenia on

[1] For purposes of considering Defendants' Motion, the Court accepts all facts contained within Plaintiffs' Complaint as true, as it must at the motion-to-dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

March 24, 2026. *Id.* at 1. After his interview, the U.S. Department of State issued Plaintiff's wife a Section 221(g) refusal[2] and informed the couple that the Department of State is pausing visa issuance to Iranian nationals, effective January 21, 2026. *Id.*

Plaintiff challenges the refusal of his wife's visa application and the length of the adjudication process. Dkt. 1 at 6. He contends that

> By US law, there is no provision that separate spouses from each other or prevents them from living together. We were married before President Trump get presidency therefore; his travel ban order should not affect us. Such an order that does not allow spouses to be reunited is against the American Constitution. Now we ask for Mandamus writ and justice be served and let us as spouse live together. As a US citizen, Do I have right to live with My wife in my country and my home?"

Dkt. 1-1 at 2.

Plaintiff cites no legal authority in support of his position. Instead, Plaintiff describes his concerns regarding the visa process as follows:

> "If they had a travel ban to not issue [us] a visa, then why did they ask us to go to Iraq to certify our marriage by the Iraqi Ministry of Foreign Affairs, and why did the National Visa Center not ask us to certify our marriage during those two years' time? Or why USCIS did not ask us this marriage certificate should be certified by Iraqi Foreign Ministry? . . . When the consular officer approved our ethnic/religion exception, then why someone changed mind and after submitting our certified marriage certificate. "

*Id.* at 1.Plaintiff further asserts that, during the four years since he and his wife married, "every year [he] traveled to Iraqi Kurdistan or Armenia to be with [his] wife for several months. . . has cost [them] tremendous hardship and expenses." Dkt. 1-1 at 2. Plaintiff relies on these

---

[2] The non-final refusal of beneficiary Mahnaz Hosseini Cheshmehmantesh's immigrant visa was noted in an exhibit attached to Plaintiff's Complaint. Dkt. 1-1 at 7. As such, this Court will analyze the Section 221(g) refusal as part of the Complaint. *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.").

circumstances to allege that Defendants' delay in the adjudication of his wife's visa application is unreasonable. Dkt. 1 at 4. Plaintiff seeks an order directing Defendants to "get [a] visa for my wife and I [to] live together." *Id.* at 6.

B. Procedural Background

Plaintiff filed his Complaint on June 2, 2026. Dkt. 1. On August 3, 2026, Defendants filed the instant Motion and a Memorandum in Support. Dkts. 5-6. That same day, the Court issued a notice pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975). Dkt. 8. On August 17, 2026, Plaintiff filed his Opposition. Dkt. 10. On August 24, 2026, Defendants filed a Notice of No Reply. Dkt. 11. On September 16, 2026, Plaintiff filed a Request to Expedite Order. Dkt. 13.

II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal when the Court lacks jurisdiction over the subject matter of the action. A district court must dismiss an action over which it lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1), (h)(3). In considering a 12(b)(1) motion to dismiss, the burden is on the plaintiff to prove that subject-matter jurisdiction is proper. *See United States v. Hays*, 515 U.S. 737, 743 (1995) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)); *see also Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

There are two ways in which a defendant may prevail on a 12(b)(1) motion. First, a defendant may attack the complaint on its face when the complaint "fails to allege facts upon which subject-matter jurisdiction may be based." *Adams*, 697 F.2d at 1219. Under this method of attack, all facts as alleged by the plaintiff are assumed to be true. *Id.* Alternatively, a 12(b)(1) motion to dismiss may attack the existence of subject-matter jurisdiction over the case apart from the pleadings. *Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995). In such a case, "[n]o

presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional claims." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). Moreover, a court may consider evidence extrinsic to the complaint to determine whether subject-matter jurisdiction exists. *Adams*, 697 F.2d at 1215 (citing *Mims v. Kemp*, 516 F.2d 21 (4th Cir. 1975)).

## III. ANALYSIS

Defendants move to dismiss Plaintiff's Complaint under Federal Rules of Civil Procedure ("Rule") 12(b)(1) for lack of subject-matter jurisdiction and Rule 12(b)(6) for failure to state a claim. Dkt. 5. "Generally, a court must resolve jurisdictional issues before considering the merits of a claim, because '[w]ithout jurisdiction the court cannot proceed at all in any cause.'" *Whitaker v. Monroe Staffing Servs., LLC*, 42 F.4th 200, 206 (4th Cir. 2022) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998)); *see also Zadeh v. Blinken*, 2024 WL 2708324, at *4 (N.D. Ill. May 20, 2024) ("Subject matter jurisdiction always comes first."). Accordingly, the Court must first evaluate Defendants' Motion under Rule 12(b)(1) and, if the Court finds that there is no subject-matter jurisdiction, the Court need not address Defendants' other arguments.

Defendants contend this Court lacks subject matter jurisdiction because Plaintiff cannot identify a clear, non-discretionary duty for Defendants to re-adjudicate Plaintiff's wife's already-refused immigrant visa application.[3] Dkt. 6 at 6-18. Plaintiff, on the other hand, alleges that the

[3] Defendants also correctly argue that Plaintiff cannot establish Article III standing to bring the suit. Dkt. 6 at 6-7. To establish Article III standing, a plaintiff must establish an (1) injury in fact that is (2) fairly traceable to Defendants' conduct and is (3) likely to be redressed by a favorable decision. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). Plaintiffs generally must assert their own legal rights and interests, and cannot base their claim to relief on the legal rights or interests of third parties. *Warth v. Seldin*, 422 U.S. 490, 499 (1975). Plaintiff has not established how his own rights were violated; rather, Plaintiff's claims revolve around the

State Department and consular officers have a duty to adjudicate his wife's visa within a reasonable period of time, and that this duty has not been fulfilled by the issuance of the Section 221(g) notice. Dkt. 1 ¶¶ 4, 5. Judicial review of agency inaction is limited under both the APA and the Mandamus Act and, thus, this initial issue is determinative of Plaintiff's claims. As the Supreme Court held in *Norton v. Southern Utah Wilderness Alliance*, APA Section 706 claims asking a court to "compel agency action unlawfully withheld or unreasonably delayed," may "proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." 542 U.S. 55, 64 (2004). The Fourth Circuit has framed *Norton*'s prohibition on judicial review of APA Section 706 claims as a part of APA Section 701(a)(2)'s preclusion of judicial review of "agency action . . . committed to agency discretion by law." *Lovo v. Miller*, 107 F.4th 199, 211 (4th Cir. 2024). The Fourth Circuit treats the absence of discrete, required agency action as jurisdictional, not merely as an issue of the plaintiff failing to state a meritorious APA Section 706 claim. *See id.* at 216 (affirming dismissal for lack of subject-matter jurisdiction where the plaintiffs' APA claim was not based on a discrete legal requirement); *Gonzalez v. Cuccinelli*, 985 F.3d 357, 365-66 (4th Cir. 2021) (characterizing *Norton*'s holding as jurisdictional); *NAACP v. Bureau of the Census*, 945 F.3d 183, 191 (4th Cir. 2019) (finding that a plaintiff's failure to identify agency action eligible for judicial review under the APA is a "jurisdictional defect").

The Mandamus Act similarly "only permits federal courts to exercise jurisdiction if an agency has a clear duty to act." *Lovo*, 107 F.4th at 216 (citing 28 U.S.C. § 1361). Indeed, the

---

alleged violation of his wife's rights. Additionally, as noted by Defendants, the Supreme Court recently decided that U.S. citizens have "no interest in the issuance of a visa to an offshore family member or in the underlying processes." Dkt. 8 at 6; *Department of State v. Muñoz*, 602 U.S. 899, 908-09, 916-17 (2024). Without providing a basis for why Plaintiff should have Article III standing for a third-party claim, Plaintiff lacks Article III standing and this provides another basis on which to dismiss.

Supreme Court's conclusion in *Norton* that "the only agency action that can be compelled under the APA is action legally required" derives from the traditional mandamus remedy, which was historically "limited to enforcement of a specific unequivocal command, the ordering of a precise definite act . . . about which [an official] had no discretion whatever." 542 U.S. at 63 (internal citations omitted). Thus, mandamus relief is only available where the agency has a "clear duty to act," and, as is the case under the APA, such a clear duty is a "threshold requirement[ ]" under the Mandamus Act that is "jurisdictional; unless [it is] met, a court must dismiss the case for lack of jurisdiction." *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016). In assessing whether a clear duty or a discrete, required agency action exists, courts look for a "clear indication of binding commitment," *Norton*, 542 U.S. at 69, in "the text of the relevant statutes and regulations," *Lovo*, 107 F.4th at 211. "[T]he presence of 'unmistakably mandatory' language, such as the word 'will,' can provide sufficient evidence of the unequivocal command . . . to hold that an agency is compelled to act." *Id.* (citing *Gonzalez*, 985 F.3d at 366-71). However, "the impact of seemingly mandatory or permissive language depends heavily on the context in which it appears." *Id.* at 212.

Federal regulations provide that, when a visa application has been executed, "the consular officer *must* issue the visa, refuse the visa, or . . . discontinue granting the visa." 22 C.F.R. § 41.121 (a) (emphasis added); *see also* 22 C.F.R. § 42.81(a) (providing that "the consular officer must issue the visa, refuse the vias under § 221(a) or (g) . . . or . . . discontinue granting the visa"). This mandatory language establishes a nondiscretionary duty for consular officers to review and adjudicate visa applications by issuing, refusing, or discontinuing granting visas. Importantly for this case, this language explicitly provides that consular officers may discharge their duties by refusing a visa. 22 C.F.R. § 41.121 (a); 22 C.F.R. § 42.81(a). Specifically, 22 C.F.R. § 41.121(a)

provides that a Section 221(g) refusal constitutes a qualifying refusal, stating that "nonimmigrant visa refusals must be based on legal grounds such as . . . INA [Section] 221(g)." The State Department Foreign Affairs Manual further clarifies, "[a] refusal under INA 221(g) is, legally, a refusal on a visa application, even if that refusal is eventually overcome." 9 FAM 302.1-8(B)(c).

Thus, Defendants here have already taken the discrete action required of them by issuing a Section 221(g) notice of refusal for administrative processing and thus have satisfied their obligation to adjudication the visa application. After a refusal, such as a Section 221(g) refusal for administrative processing, has been made, no further discrete action is required under the INA, 22 C.F.R. § 41.121(a) or § 42.81, or any other pertinent statute or regulation. Put another way, "[i]n refusing Plaintiff['s wife's] application[] under 221(g) after [their] interview[] with consular officers, [Defendants] complied with the regulations governing visa adjudications. [Defendants] thereby discharged [their] nondiscretionary duty."[4] *Yaghoubnezhad v. Stufft*, 734 F. Supp. 3d 87,

---

[4] Many courts, both within the Fourth Circuit, and in other Circuits, have come to the same conclusion. *See Sarshartehran v. Rubio*, 2025 WL 1261787, at *6 (W.D. Va. May 1, 2025) (holding that after a Section 221(g) refusal, "there is no further discrete action consular officers must take to satisfy their obligations"); *Aslam v. Heller*, 2024 WL 3535389, at *6-7 (M.D.N.C. July 23, 2024) (holding that, for a family visa application, immigrant visa refusals under INA Section 221(g) are a "discrete action" thereby "discharge[ing the defendants'] nondiscretionary duty"); *Farahani v. Laitinen*, 2025 WL 360833, at *4 (M.D.N.C. Jan. 31, 2025) ("The consular officer in this case . . . discharged the discrete, non-discretionary duty to adjudicate the visa applications of Dr. Farahani's family by informing them that the applications had been refused and were being placed in administrative processing."); *Turner v. Blinken*, 2024 WL 4957178, at *5 (D. Md. Dec. 3, 2024) (collecting cases in this circuit and deciding "[p]laintiffs cannot meet their burden to prove subject matter jurisdiction because they cannot show that Defendants have failed to fulfill a discrete, non-discretionary duty to act after their refusal . . . pursuant to [Section] 221(g)"); *Berenjian v. Blinken*, 2024 WL 3732451, at *3 (E.D. Va. Aug. 8, 2024) (holding that "[t]his [§ 221(g)] refusal at the time of the applicant's interview discharges the government's obligations with respect to the application," thus depriving the district court of subject-matter jurisdiction); *accord Denisova v. Mayorkas*, 2024 WL 2043664, at *3-4 (W.D. Pa. May 8, 2024) (holding the same); *Conley v. United States Dep't of State*, 2024 WL 1640074, at *4-5 (D. Mass.

101 (D.D.C. 2024); *see also Parashkooh v. Platek*, 2025 WL 1732518, at *5 (E.D. Va. June 18, 2025) (holding same with respect to F and/or J category nonimmigrant visas). The finding that this Court does not have subject-matter jurisdiction is consistent with this District Judge's past rulings on similar Section 221(g)-related cases. *See Shabani v. Rubio*, 2026 WL 2114508, at *5 (E.D. Va. July 22, 2026) (dismissing complaint regarding delays in the adjudication of visa applications after receiving a Section 221(g) refusal for lack of subject-matter jurisdiction); *Arshadi v. Platek*, 2025 WL 1570967, at *4 (E.D. Va. June 3, 2025) (same); *Parashkooh v. Platek*, 2025 WL 1732518, at *5 (E.D. Va. June 18, 2025) (same); *Patrick v. Rubio*, 2026 WL 612666, at *4 (E.D. Va. Mar. 4, 2026) (same); *Naseri v. Rubio*, 2025 WL 1888249, at *4 (E.D. Va. July 8, 2025) (same). Additionally, other judges in this Circuit have also specifically reached this same conclusion with respect to K visas. *See Turner v. Blinken*, 2024 WL 4957178, at *6 (D. Md. Dec. 3, 2024) ("Absent further authority, Plaintiffs cannot meet their burden to prove subject matter jurisdiction because they cannot show that Defendants have failed to fulfill a discrete, non-discretionary duty to act after their refusal of Quentin's visa pursuant § 221(g)."). Thus, this Court lacks jurisdiction.

This Court defers the question of whether a refusal under Section 221(g) is a "final adjudication," because this Court concludes that there is no *clear* mandatory duty under the INA or its implementing regulations requiring consular officers to reach a more definitive decision on a visa application that has already been refused. Nothing in the regulations provide a "'specific, unequivocal command' for [the] State [Department] to issue a final, unreviewable decision." *Yaghoubnezhad*, 734 F. Supp. 3d at 102 (quoting *Norton*, 542 U.S. at 63): *see also Ramizi v.*

---

Apr. 16, 2024) ("Because [the] defendants have acted on the visa application, they have not failed to take any legally required action . . . .").

*Blinken*, 745 F. Supp. 3d 244, 261 (E.D.N.C. 2024) ("[T]he possibility of reconsideration of a refusal does not mean that the refusal was not a refusal."); *Farahani*, 2025 WL 360833, at *4 (holding the same). Further, the absence of any finality requirement in 22 C.F.R. § 41.121(a) or § 42.81 is telling because, although the INA contains the general directive that visa applications "shall be reviewed and adjudicated," 8 U.S.C. § 1202(d), it is 22 C.F.R. § 41.121(a) that contains the discrete requirement that visa applications "must" be issued or refused. 22 C.F.R. § 41.121(a). By refusing the visa application, Defendants here have already taken this discrete, required agency action, and Plaintiff has not pointed to any alternative statute or regulation that might provide a "clear indication of binding commitment" to take additional action resulting in a conclusive, unreviewable determination. *Norton*, 542 U.S. at 69.

In sum, the Court lacks jurisdiction over Plaintiff's claims because Defendants have already satisfied their mandatory duties under the INA and implementing regulations by issuing a Section 221(g) refusal for administrative processing, and there is no further discrete, required agency action that the Court could compel Defendants to take. Accordingly, Defendants' Motion will be granted.

## IV. CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that Defendants' Motion to Dismiss for lack of subject-matter jurisdiction (Dkt. 5) is GRANTED; and it is

FURTHER ORDERED that Plaintiff's Complaint (Dkt. 1) is DISMISSED WITHOUT PREJUDICE; and it is

FURTHER ORDERED that the Request to Expedite (Dkt. 13) is DENIED as MOOT; and it is

FURTHER ORDERED that the Clerk of the Court is DIRECTED to forward copies of this Order to *pro se* Plaintiff and all counsel of record and to place this matter among the ended causes.

To appeal this decision, Plaintiff must file a written notice of appeal with the Clerk of Court within thirty (30) days of the date of entry of this Order. A notice of appeal is a short statement indicating a desire to appeal, including the date of the order that Plaintiff wants to appeal. Plaintiff need not explain the grounds for appeal until so directed by the court of appeals. Failure to file a timely notice of appeal waives Plaintiff's right to appeal this decision.

It is SO ORDERED.

Alexandria, Virginia
October 21, 2026

/s/

Rossie D. Alston, Jr.
United States District Judge